## North American Acc. Ins. Co. v. West.

(Decided October 18, 1932.)

WOODWARD, HAMILTON & HOBSON, and JOHN J. HOWE for appellant.

G. A. DONALDSON and J. L. DONALDSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal requires a review of a trial by jury in which a judgment for $1,000, with interest at the rate of 6 per cent. per annum from July 24, 1930, and costs, was rendered in favor of Bertha West, the beneficiary of an accident insurance policy, issued and delivered on the 24th day of May, 1929, by the North American Accident & Insurance Company, Chicago, Ill., to Virgil R. West. The policy insured Virgil R. West against injury or death by "the wrecking or disablement of a private automobile or private horse drawn vehicle," provided he was not at the time of his injury operating such automobile or vehicle in the carrying of passengers for hire, and not transporting merchandise for business purposes, and not using it for a criminal purpose or to escape the consequence of an illegal or criminal use or arrest.

The only issue presented by the pleadings was whether the insured's death on the 20th day of March, 1930, resulted from the wrecking of his automobile while being operated by him on the highway in the vicinity of his home, in Carroll county, Ky. The purpose for which his automobile was being operated at the time of his death is not disputed.

The predominant question is, "Was his death the direct and proximate result of his automobile leaving the public highway, and going over a precipice, 40 or 50 feet to where it was later found?"

At the close of the evidence in behalf of Bertha West, and also on the completion of the evidence in its behalf, the appellant, the North American Accident Insurance Company, requested the court to direct the jury to find for it. Its request was refused. It is here insisting that the evidence did not authorize a submission of the case to the jury. A review of the evidence is required to present and properly consider and determine its contention.

On the morning of the day on which he came to his death, Virgil West and Lewis Darbo went in West's car from the depot in Sanders, Ky., to a point on the

road between Sanders and New Liberty, where Darbo alighted from the car and West proceeded alone on the highway in the direction of New Liberty. The road, at one point, was narrow, not over 2 feet wider than his car, where his car left the highway, and went over a precipice 40 or 50 feet, directly to the foot of the precipice. When it was found that evening, the bottom of the windshield was broken out; the back curtain torn; the back bows bent but not broken; the emergency brake was on; the switch key on, one door open; a small cushion, like a chair cushion, was in the driver's seat on top of the car cushion, and the tire on one wheel was blown out. The car was in an upright poistion on its wheels

About 9 o'clock of the morning of the day he was found dead, he was seen "walking rather briskly, rather unusually fast, going up the creek," to the left of the place where his body was later found. He was wearing overalls, jacket and pants, and a light-colored hat. Late in the evening of that day, his body was discovered about one mile from the automobile. It was in a small brook where the water was about 20 to 22 inches deep, partially back under a root of a big elm tree. The water had washed out under the tree and exposed its roots. The pool of water where he was found was 12 to 14 feet long and about 5 or 6 feet wide. He was lying, face down, his head submerged, his hat on his head, but his work jacket was dry on the right hip. His clothing corresponded with those described by the witness who had observed him about 9 o'clock in the morning, traveling in the direction of where he was found. There were larger pools of water, both above and below where his body was found. The place where his car was found was more accessible and public than was the place where his body was found. The latter place was not near any road, or where there was passing, and it was not in view of any buildings. The route he was using that morning when going from his automobile to where the body was found was about 1¼ miles. When first discovered, the body was discolored so much that it required special attention of the undertaker. There was a bruise or discoloration about the size of a half dollar on the right temple; a slight cut or scratch on his neck and a slight one on his left hand. The bruise or discoloration on his right temple was shown to have been made before his death. No autopsy was made.

Four years next before his death, he was so afflicted with melancholia that he was confined in a sanatorium in Louisville, Ky., where he remained and was treated for a few months, when he was discharged as cured. From that time until within some few days before his death, his mental condition was normal, when a change in it was observed by one of the physicians who had advised his confinement and treatment in the sanatorium.

A mere resume of the evidence is convincing to an unbiased disinterested mind that the cause of West's death is a mere supposition utterly without proof. L. & N. R. R. Co. v. Mann's Adm'r 227 Ky. 399, 13 S. W. (2d) 257; Cochran's Adm'rs v. C. & O. R. R. Co., 232 Ky. 107, 22 S. W. (2d) 452; Park Circuit & Realty Co. v. Ringo's Gdn., 242 Ky. 255, 46 S. W. (2d) 106. A suspicion or conjecture as to what caused the death of West was not sufficient to constitute evidence to take the case to the jury. Burdon v. Burdon's Adm'x, 225 Ky. 480, 9 S. W. (2d) 220; Park Circuit & Realty Co. v. Ringo's Gdn., supra. No evidence of a death-producing traumatic injury was found on his body. The condition of the automobile at the time it was found and his actions immediately following its leaving the highway, show that his death was not the result of the automobile leaving the road. In fact the automobile itself was not seriously disabled. It was operated by its own power, from the place where it was found. It was incumbent upon Bertha West to establish by competent evidence that the death of deceased was the direct and proximate result of the automobile going over the precipice. Ky. T. & T. Co. v. Roman's Gdn., 232 Ky. 288, 23 S. W. (2d) 272; Wright v. Powers & Sons, 238 Ky. 572, 38 S. W. (2d) 465. There is a total failure of evidence showing that the death of West was the direct and proximate result of his automobile leaving the road, passing over the precipice and stopping in the creek bed. Gatliff Coal Co. v. Sumner, 196 Ky. 592, 245 S. W. 144; Kelly & Shields v. Miller, 236 Ky. 698, 33 S. W. (2d) 662. In the absence of more evidence than mere supposition or conjecture that his death resulted therefrom, it cannot be considered that there was any evidence that the precipitation of the automobile caused his death, sufficient to require a submission of the case to the jury. Broyles v. Able, Jr., 208 Ky. 672, 271 S. W. 1040; Park Circuit & Realty Co. v. Ringo's Gdn.,

supra. It is argued that the automobile going over the cliff produced a state of insanity in the deceased, and, while in a semiconscious state resulting therefrom, he fell into the water and drowned. This contention is no more than a mere theory unauthorized and unsupported by the evidence. It is a general rule that, if there is any evidence tending to support the plaintiff's cause of action (Bright v. Collins, 181 Ky. 753, 205 S. W. 905); or if the evidence is such that reasonable men would draw different conclusions therefrom, the case should be submitted to the jury (Citizens' State Bank v. Johnson County, 182 Ky. 531, 207 S. W. 8), unless from all the evidence and inferences deducible the plaintiff has failed to make his case (Stevenson v. Yates, 813 Ky. 196, 208 S. W. 820). A verdict should be directed peremptorily only if, after admitting every fact shown by the plaintiff's evidence to be true as well as all reasonable inferences that can be drawn therefrom, he has failed to establish his case. L. & N. R. R. Co. v. Baker's Adm'r, 183 Ky. 795, 210 S. W. 674; Hines v. Gaines, 192 Ky. 198, 232 S. W. 624. The verdict should not be directed if the evidence constitutes a scintilla of proof, though it might be insufficient to sustain the verdict. Burdon v. Burdon's Adm'x, 225 Ky. 480, 9 S. W. (2d) 220. The jury are the triers of the facts (Caledonian Ins. Co. v. Naifeh, 229 Ky. 293, 16 S. W. (2d) 1046), and it is the duty of the court when a peremptory instruction is asked to construe the evidence most favorably to the plaintiff (City of Louisville v. Hale's Adm'r, 238 Ky. 182, 37 S. W. (2d) 20). "Evidence" sufficient to submit the case to the jury means something of substance and consequence, not vague and uncertain matter lacking in quality of proof or evidence to induce conviction. Newman v. Dixon Bank & Trust Co., 205 Ky. 31, 265 S. W. 456; Standard Accident Ins. Co. v. Strunk, 220 Ky. 256, 294 S. W. 1085; Langford's Ex'r v. Miles, 189 Ky. 515, 225 S. W. 246; Gay v. Gay, 183 Ky. 238, 209 S. W. 11, 14; Cecil v. Oertel Co., 239 Ky. 825, 40 S. W. (2d) 328. In Gay v. Gay, supra, it was written: "The scintilla rule does not mean the making of something out of nothing. Mere conjecture or suspicion is not sufficient to constitute evidence." U. S. Fidelity & Guaranty Co. v. Antle, 240 Ky. 243, 42 S. W. (2d) 1; L. & N. R. R. Co. v. Crockett's Adm'x, 232 Ky. 726, 24 S. W. (2d) 580.

No question of deceased's mind was raised or pre-

sented in the pleadings, and there was no evidence to show or tending to show that the precipitation of the automobile caused his insanity. The evidence is that a few days prior to the death of West he was irrational, and that this state of mind was observed by a friend. Such was not sufficient to warrant a submission of the case to the jury. The court erred in failing to direct a verdict for the appellant.

Judgment reversed for proceedings consistent with this opinion.